T.C. Memo. 1996-56


UNITED STATES TAX COURT


B. THEODORE AND WENDY CHAPIN, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 12106-94.      Filed February 14, 1996.


Ps own a beach condominium that is rented for an average period of 7 days or less during the June to September rental season.  A rental agent handles all leasing arrangements, cleaning between tenants, and routine repairs and maintenance.  Ps allege that they spend more than 170 hours during the nonrental season on cleaning and maintaining the condominium.  <u>Held</u>: For purposes of sec. 469, I.R.C., Ps' participation in the activity does not constitute participation on a regular, continuous, and substantial basis.  Accordingly, the losses incurred are subject to the passive loss rules of sec. 469, I.R.C.


<u>E. Gregory Lardieri</u> and E. Newton Steely, Jr. (specially

recognized), for petitioners.

<u>John C. Donovan</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

POWELL, <u>Special Trial Judge</u>:  This case was assigned pursuant to the provisions of section 7443A(b)(3) and Rules 180, 181, and 182.[1]

Respondent determined deficiencies in petitioners' Federal income taxes in the following amounts:

| Year | Deficiency |
|------|------------|
| 1987 | $1,694 |
| 1988 | 8,337 |
| 1989 | 9,930 |
| 1990 | 9,511 |
| 1991 | 2,089 |

The issue is whether deductions related to the expenses of renting a beach condominium owned by petitioners are limited by the passive activity loss limitations of section 469.

FINDINGS OF FACT

During the years 1987 through 1991, and at the time of filing the petition, petitioners resided in Silver Spring, Maryland.  Petitioner B. Theodore Chapin (Mr. Chapin) worked full time as vice president of American Digital Systems Corp. until December of 1990, at which time he organized and began working full time for his own corporation, Applied Software, Inc. Petitioner Wendy Chapin (Mrs. Chapin) is a housewife/artist who

---

[1]  Unless otherwise indicated, section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

specializes in copying paintings that are displayed in the National Gallery of Art in Washington, D.C. She does not generally sell these reproductions.

During the years at issue, petitioners owned various rental properties. In 1987, petitioners owned properties in Apopka, Florida, and Silver Spring, Maryland. In 1988, petitioners acquired another property in Silver Spring, Maryland. In 1989, petitioners purchased property in Takoma Park, Maryland, and a third property in Silver Spring, Maryland. These properties were generally leased for 1 year terms.

Petitioners also own a condominium apartment (the condominium) in Ocean City, Maryland. The condominium was purchased in 1986 and consisted of two bedrooms, two full bathrooms, a kitchen, a living room/dining room area, a laundry/utility room, and a balcony. The condominium was rented to tenants between June and September (the rental season). The average rental term was 7 days or less for each of the years at issue.

Petitioners left the day-to-day management of the property in the hands of O'Conor, Piper & Flynn (the rental agent). The rental agent's duties included advertising the property for rent, receiving calls from prospective tenants, showing the condominium to prospective tenants, dispensing and collecting keys, collecting rent and deposits from tenants, hiring a cleaning

service to clean between rentals, hiring maintenance people to perform repairs on the premises, and preparing owner's reports detailing the income and expenses of the rental.

Petitioners testified that they spent between 170.5 and 193.5 hours every year in various activities relating to the condominium. This alleged participation consisted of: Cleaning (39.5-50.5 hours), shopping (8 hours), general maintenance (29-31 hours), travel to and from Ocean City (70-80 hours),[2] and repainting (24 hours). Petitioners purportedly spent an additional 24 hours in both 1988 and 1990 painting the entire condominium, and Mrs. Chapin spent 32 hours in 1987 and an additional 35 hours painting copies of paintings to hang on the walls of the condominium.[3]

Petitioners did not maintain a log or other record of their hours of participation. Petitioners introduced credit card receipts from restaurants and other commercial enterprises in Ocean City or the vicinity to corroborate their testimony that they were in the area seven to eight times a year between the end of one commercial rental season in September and the beginning of

---

[2] Travel time consisted of seven to eight trips per year at 5 hours per round trip for both petitioners.

[3] Mrs. Chapin was uncertain as to the years in which this participation occurred.

the next in June.[4]  The driving time from Silver Spring to Ocean City is approximately 2-1/2 hours.

Petitioners filed joint Federal income tax returns claiming a business loss on Schedule C from the rental of the condominium for each of the taxable years at issue.  The claimed losses, after agreed-upon adjustments, were in the following amounts:

| Year | Loss |
|------|------|
| 1987 | $25,341 |
| 1988 | 26,861 |
| 1989 | 23,953 |
| 1990 | 22,493 |
| 1991 | 21,056 |

In the notice of deficiency, respondent determined that the rental of the condominium was a passive activity, and, therefore, petitioners' claimed losses for each year were suspended pursuant to section 469.

### OPINION

Section 162 allows deductions for all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business.  Section 212 allows deductions for all the ordinary and necessary expenses paid or incurred during the taxable year for the production of income or the management or maintenance of property held for the production of

---

[4]  The receipts showed that petitioners were in Ocean City, or the vicinity, between five and eight times per year.

income.  Section 469, however, limits the deductions for losses from a "passive activity".  A passive activity means any activity

(A) which involves the conduct of any trade or business, and

(B) in which the taxpayer does not materially participate.  [Sec. 469(c)(1).]

Generally, an activity in which payments are received principally for the use of tangible property by customers is a "rental activity".  Sec. 469(j)(8); sec. 1.469-1T(e)(3)(i)(A), Temporary Income Tax Regs, 53 Fed. Reg. 5702 (Feb. 25, 1988). All rental activities are deemed passive.  Sec. 469(c)(2), (4); sec. 1.469-1T(e)(1), Temporary Income Tax Regs., 53 Fed. Reg. 5702 (Feb. 25, 1988).  However, if the average period of customer use of the property is 7 days or less, the activity is not considered to be a "rental activity".  Sec. 1.469-1T(e)(3)(ii)(A), Temporary Income Tax Regs., 53 Fed. Reg. 5702 (Feb. 25, 1988).  Nonetheless, an activity falling outside the definition of a rental activity will be passive if the taxpayer does not materially participate in the activity.  Sec. 469(c)(1); sec. 1.469-1T(e)(1), Temporary Income Tax Regs., supra.

An individual materially participates in an activity when involved in the operations of the activity on a regular, continuous, and substantial basis.  Sec. 469(h)(1).  Pursuant to section 469(l)(1), the Secretary has issued regulations that specify what constitutes material participation.  Section 1.469-

5T(a)(2), (3), and (7), Temporary Income Tax Regs., 53 Fed. Reg. 5725-5726 (Feb. 25, 1988), provides, in relevant part, that an individual shall be treated as materially participating if the individual meets any of the following tests:

> (2)  The individual's participation in the activity for the taxable year constitutes substantially all of the participation in such activity of all individuals (including individuals who are not owners of interests in the activity) for such year;

> (3)  The individual participates in the activity for more than 100 hours during the taxable year, and such individual's participation in the activity for the taxable year is not less than the participation in the activity of any other individual (including individuals who are not owners of interests in the activity) for such year;

> *    *    *    *    *    *    *

> (7)  Based on all of the facts and circumstances (taking into account the rules of paragraph (b) of this section), the individual participates in the activity on a regular, continuous, and substantial basis during such year.

The "material participation standard identifies an important distinction between different types of taxpayer activities."  S. Rept. 99-313, at 716 (1986), 1986-3 C.B. (Vol. 3) 1, 716.  The focus of section 469 is directed to suspending the so-called tax preferences unless there is "substantial and bona fide involvement in the activities to which the preferences relate."  Id.  It is necessary "to examine the materiality of a taxpayer's participation in an activity in determining the extent to which

such taxpayer should be permitted to use tax benefits from the activity." Id.

It is important, therefore, to define the activity subject to the limits of section 469. For income tax purposes there are generally two economic interests involved in the ownership of real estate--the value of the asset as an investment, and if rented, the value of the rental income. As to the first, the value of the asset may appreciate or depreciate, and, the resulting gain or loss is generally recognized as a capital transaction when the property is sold even though the economic gain or loss was realized over the years that the property was owned. See sec. 1001. On the other hand, the leasing activity gives rise to gross income and deductions, and the net income or loss generally is realized and recognized during each taxable year that the property is rented. See secs. 61, 441. When section 469 applies to rental real estate, it operates to suspend losses from the leasing activity. Accordingly, we will use the terms "activity" and "leasing activity" interchangeably.

In this case, the average lease period of the condominium was 7 days or less during the years at issue, and, therefore, the leasing activity is not a "rental activity" for purposes of section 469(c)(2). Sec. 1.469-1T(e)(3)(ii)(A), Temporary Income Tax Regs., supra. While the leasing activity falls outside the definition of a "rental activity", section 469 nonetheless

applies if petitioners did not materially participate in the activity. Sec. 469(c)(1).

Petitioners assert that they meet the so-called safe harbor requirements of section 1.469-5T(a)(2), Temporary Income Tax Regs., supra. That section provides that the taxpayer's participation must constitute "substantially all of the participation in such activity of all individuals" during the years at issue. But the rental of the condominium required continual involvement in the leasing and day-to-day management of the property. The rental agent had complete responsibility for these activities, and, therefore, petitioners' participation did not constitute "substantially all of the participation" in the activity.

Petitioners also assert that they meet the "safe harbor" requirements of section 1.469-5T(a)(3), Temporary Income Tax Regs., supra. To satisfy this test, petitioners must establish that (1) they participated in the activity for more than 100 hours each year, and (2) no other individual's participation exceeded petitioners' participation during each year. Regardless whether petitioners satisfy the first requirement, they have not established that no other participation exceeded their participation in the activity. The rental agent not only advertised, showed, and rented the property, but was also routinely available to handle complaints, repairs, etc. Further,

after each tenant, a cleaning service cleaned the property. While we do not know how much time these services took, they involve a substantial amount of time.  It is petitioners' burden to show that they satisfy the requirements of section 1.469-5T(a)(3), Temporary Income Tax Regs., supra, and they have failed to meet that burden.[5]

Petitioners alternatively contend that, if they fail the so-called safe harbor provisions of paragraphs (a)(2) and (3) of section 1.469-5T, Temporary Income Tax Regs., supra, they nonetheless satisfy the requirements of section 1.469-5T(a)(7), Temporary Income Tax Regs., supra.  Section 1.469-5T(a)(7), Temporary Income Tax Regs., supra, mirrors the statutory definition of "material participation" set out in section 469(h)(1) and requires that petitioners show they participated in the activity on a regular, continuous, and substantial basis during each year.  As an initial matter, petitioners' participation must exceed 100 hours each year.  Sec. 1.469-5T(b)(2)(iii), Temporary Income Tax Regs., 53 Fed. Reg. 5726 (Feb. 25, 1988).  Measuring participation in terms of time may be useful in setting minimum requirements and in defining safe

---

[5]  No witness from the rental agency testified.  Mr. Chapin attempted to testify as to his estimate of the hours spent by the rental agent in connection with the rental and maintenance of the condominium.  Respondent objected on the ground that Mr. Chapin did not have personal knowledge of that fact.  The objection was sustained.

harbors, but the deductibility of a loss under section 469(h)(1) depends also on regular and continuous participation in the activity.

While we have grave doubts concerning the time allegedly spent by petitioners,[6] even if that time would satisfy the minimum requirement of the regulation, the work performed by petitioners in connection with the leasing activity was not regular and continuous participation. We reemphasize here, the activity with which we are concerned is the rental of the property. As we have already outlined, the rental of the condominium to many different tenants over the course of the rental season required substantial work and time. The rental agent advertised, showed the condominium, collected rent and deposits from tenants, collected and dispensed keys, hired a cleaning service to clean the condominium between tenants, hired maintenance people to perform repairs on the premises, and maintained an office to receive calls from tenants and

---

[6] We are not persuaded that the time allegedly spent by petitioners is an accurate reflection of what transpired. Petitioners claim to have spent 5 to 6 hours cleaning two bathrooms, 8 hours cleaning a kitchen, and 5 hours "refreshing" plastic floral arrangements. We are left with the conclusion that much of the total time allegedly spent was exaggerated or, if not, was spent primarily for the purposes of avoiding the limitations of sec. 469. See sec. 1.469-5T(f)(2), Temporary Income Tax Regs., 53 Fed. Reg. 5726-5727 (Feb. 25, 1988). As set out above, however, time is not the only measure of an individual's participation. We, therefore, do not find it necessary to determine the amount of time that petitioners spent on the rental activity.

prospective tenants. A cleaning service cleaned the condominium after each tenant vacated the premises throughout the rental season. Maintenance workers performed repairs to the condominium. The performance of this work constituted the regular and continuous participation in the activity, and notably absent was any participation by petitioners. Petitioners' contribution to the activity consisted of a single, albeit thorough, cleaning of the condominium after each rental season. They may have extended this participation over six or eight weekends during the nonrental seasons, but their contribution to the activity did not constitute participation on a basis that was regular and continuous.[7]

Based on the foregoing, we find that petitioners did not materially participate in this activity.

_____

[7] The report of the Finance Committee notes:

Another factor that may be highly relevant in showing regular, continuous, and substantial involvement in the operations of an activity, and thereby establishing material participation, is whether, and how regularly, the taxpayer is present at the place or places where the principal operations of the activity are conducted. For example, in the case of an employee or professional who invests in a horse breeding activity, if the taxpayer lives hundreds of miles from the site of the activity, and does not often visit the site, such taxpayer is unlikely to have materially participated in the activity. * * * [S. Rept. 99-313, at 733 (1986), 1986-3 C.B. (Vol. 3) 1, 733.]

Decision will be entered for respondent.